IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Benjamin Lee Short,

               Petitioner,

v.

Charles L. Ryan, et al.,

               Respondents.

No. CV-13-08276-PCT-SPL (BSB)

**REPORT AND
RECOMMENDATION**

Petitioner Benjamin Lee Short has filed an Amended Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  (Docs. 4, 5.)  Respondents argue that Petitioner waived habeas corpus review by pleading guilty.  (Doc. 11.)  Respondents alternatively argue that Petitioner's claims are procedurally defaulted, not cognizable on federal habeas corpus review, and lack merit.  (*Id.*)  Petitioner has filed a reply in support of his Amended Petition.  (Doc. 12.)  For the reasons below, the Court recommends that the Petition be denied.

I.      **Procedural Background**

      A.      **Charges, Guilty Plea, and Sentencing**

On August 4, 2011, Petitioner was charged by information with the following offenses: (1) aggravated assault of a police officer, a class four felony (Count One); (2) resisting arrest, a class six felony (Count Two); (3) criminal impersonation, a class six felony (Count Three); (4) criminal damage, a class two misdemeanor (Count Four); (5) possession of dangerous drugs, a class four felony (Count Five); (6) possession of a

narcotic drug, a class four felony (Count Six); and (7) two counts of possession of drug paraphernalia, class six felonies (Counts Seven and Eight).  (Doc. 11, Ex. B.)

Petitioner was represented by counsel when the information was filed.  (Doc. 11, Ex. C.)  Petitioner was offered a plea agreement, which was later amended to include a criminal impersonation charge from another case, and in return the State did not file that case as a separate matter.  (Doc. 11, Exs. D-K, L at 3.)  On Petitioner's request, the Court appointed Petitioner new counsel and the court granted Petitioner additional time to consult with counsel regarding his case.  (Doc. 11, Exs. G-I.)

On January 23, 2012, Petitioner entered into a plea agreement with the State. (Doc. 11, Ex. K.)  The plea agreement provided that Petitioner would plead guilty to the following renumbered counts: (1) aggravated assault on a police officer, a class four felony (Count One); (2) criminal impersonation, a class six designated felony (committed on July 29, 2011) (Count Two); (3) possession of dangerous drugs, a class four felony (Count Three); and (4) criminal impersonation, a class six felony (committed on July 23, 2011) (Count Four).  (Doc. 11, Ex. K.)  The plea agreement provided that "each Class 4 felony carries a presumptive sentence of **2.5 years**; a minimum sentence of **1.5 years** . . . ; and a maximum sentence of **3 years** (an aggravated sentence of **3.75 years**)." (Doc. 11, Ex. K at 1-2) (emphasis in original).  The plea agreement also provided that "each Class 6 felony carries a presumptive sentence of **1 year**; a minimum sentence of **.5 year** . . . ; and a maximum sentence of **1.5 years** (an aggravated sentence of 2 years)." (*Id.*) (emphasis in original).

The plea agreement also set forth Petitioner's four prior felony convictions.  (*Id.* at 4.)  Petitioner initialed each page of the plea agreement and signed the agreement. (Doc. 11, Ex. K.)  Paragraph six of the plea agreement provided that Petitioner waived "any and all motions, defenses, objections, or requests which [he] has made or raised or could assert hereafter to the Court's entry of judgment against [him] and imposition of a sentence upon [him] consistent with this Plea Agreement."  (*Id.* at 4.)

On July 23, 2012, the court held a change-of-plea hearing. (Doc. 11, Ex. L.) At the outset of the change of plea hearing, the court confirmed that the plea agreement was slightly revised from a prior plea offer. (*Id.* at 4-5.) The trial court clarified that the current plea offer included an additional charge. (*Id.*) The court also stated that under the prior plea offer, which did not include the additional charge, the court had intended to sentence Petitioner to three years' imprisonment. (*Id.* at 5.) However, the plea agreement to which Petitioner was pleading guilty, included an additional charge. (*Id.*)

The court then discussed the plea agreement with Petitioner. Petitioner confirmed that he understood the court was not bound by the three-year sentence. (*Id.* at 6.) Petitioner stated that he read the plea agreement and discussed it with counsel before signing it, and that he understood and agreed with the plea agreement. (*Id.* at 6-7.) Defense counsel interjected and informed the court that Petitioner had some concerns about his sentencing exposure under the plea agreement. (*Id.* at 7.) Specifically, he was "concerned whether or not the court [was] going to stack his July 29th offenses or if the court [was] still going to give him three on that and consecutive sentence on the new charge." (*Id.*)

The court responded:

> I don't know is the answer to that, Mr. Short. The criminal impersonation case is one that I don't have any knowledge of that we're going — we're going to get a presentence report in this case now, and I don't blame you for being confused and so I don't know anything about that. I can tell you I believe my sentencing options are completely open at this time. That's why I placed that on the record, and the reason for that is that the County Attorney, you remember the last time we were here, [the prosecutor] was here, pulled the plea and we were done. He didn't think that that was an appropriate plea for you. The County Attorney's Office is able to do that at anytime that they like. I don't have any control over whether or not or what plea they offer you. The fact that there is a new charge on here, class six designated felony, causes me some concern that there is another charge out there and I have not yet considered the fact that there was another charge out there. Do I think that these will all be aggravated and stacked? No, I don't. But beyond that, I can't really tell you exactly what it is that I plan to do. I want to see the presentence report. I want to know more about this — this new count and what exactly the circumstances were surrounding that. That's the best that I can do for you now.

> This is a completely different plea agreement than the one that was offered prior to now.

(Doc. 11, Ex. L at 8.)

The court recited the charges to which Petitioner was pleading guilty, advised Petitioner of his sentencing exposure, and of the constitutional rights and appeal rights he was waiving by pleading guilty. (*Id.* at 10-13.) Petitioner affirmed that he understood the charges and his potential sentences and that he agreed to waive his rights and plead guilty. (*Id.*) Petitioner confirmed that no promises had been made to him other than those contained in the plea agreement, and that he was not forced or threatened to enter the plea agreement. (*Id.* at 11-12.) Petitioner then provided a factual basis for the guilty plea. (*Id.* at 16-18.) The trial court found that Petitioner entered the guilty plea knowingly, intelligently, and voluntarily and accepted the guilty plea. (*Id.* at 14.) At the conclusion of the hearing, Petitioner stated that he did not have any questions. (*Id.* at 18.)

Before sentencing, a sentencing report was prepared. (Doc. 11, Ex. N.) On February 14, 2012, the trial court held a sentencing hearing. (Doc. 11, Ex. O.) During the sentencing hearing, the State recommended consecutive, aggravated terms on all offenses (1) because of "Petitioner's extensive criminal history," including a 2007 aggravated assault during which Petitioner pointed a loaded gun at a man's head, and (2) because the presentence report indicated that Petitioner was a high risk to reoffend, that he did not express any remorse for his actions, and he considered law enforcement officers "obstacles to him committing further crimes." (Doc. 11, Ex. O at 3-5.) The State also noted Petitioner's "Fuck Cops" tattoos on the back of his legs in relation to the case before the court. (*Id.* at 4.)

Defense counsel acknowledged that the plea agreement included a three-year floor for sentencing and asked the court to impose concurrent sentences for the counts related to conduct that occurred on July 29th. (*Id.* at 6-8.) Alternatively, defense counsel argued that if the court were considering imposing consecutive sentences, it should still impose

1    concurrent sentences for the July 29th counts, but order that the sentence for the July 23d

2    count run consecutive to the sentences for the July 29th counts.  (*Id.*)

3            Before sentencing Petitioner, the court considered letters that Petitioner submitted,

4    the presentence report, and statements by the State and defense counsel.  (*Id.* at 10.)  The

5    court stated that it did not doubt that Petitioner was not taught how to live a responsible

6    life, however, the court noted that Petitioner had been "given opportunity after

7    opportunity after opportunity and he [had] done nothing except continue to live a life of

8    crime."  (*Id.* at 10-12.)  The court noted that Petitioner's tattoos also indicated that he

9    lived a life of crime.  (*Id.* at 10.)  The court noted Petitioner's lack of remorse, that he had

10   been in juvenile prison, he had adult offenses, and that he had committed the offenses at

11   issue three months after his release from prison for a conviction for aggravated assault

12   with a deadly weapon.  (*Id.* at 11.)  The court stated that it "intended to keep [the]

13   community safe."  (*Id.*)

14           After finding aggravating factors, prior felony convictions and prior violent felony

15   convictions with weapons, the court sentenced Petitioner to consecutive maximum

16   sentences of three years' imprisonment on Counts One and Three, consecutive maximum

17   terms of one-and-one-half years' imprisonment on Counts Two and Four, with the

18   sentences for Counts One and Three to run consecutive to the sentences for Counts Two

19   and Four, for a total of nine years' imprisonment on all counts, with 200 days presentence

20   incarceration credit.  (*Id.* at 12-13.)  The court gave Petitioner a notice of his rights of

21   review after conviction.  (Doc. 11, Ex. P.)

22           **B.    Post-Conviction Proceeding**

23           On April 5, 2012, Petitioner filed a notice of post-conviction relief pursuant to

24   Arizona Rule of Criminal Procedure 32.  (Doc. 11, Ex. Q.)  The court appointed counsel.

25   (Doc. 11, Ex. R.)   On May 22, 2012, Petitioner's counsel filed a petition for post-

26   conviction relief arguing that Petitioner's guilty plea violated Arizona Rule of Criminal

27   Procedure 17 because Petitioner relied on a promise — that he would not receive

28   aggravated stacked sentences — and his sentence was inconsistent with that promise.

(Doc. 11, Ex. S.)  On August 14, 2012, the court denied relief concluding that Petitioner was "not sentenced to aggravated stacked terms," but rather "was sentenced to maximum stacked terms." (Doc. 11, Ex. V.)

Petitioner filed a petition for review in the Arizona Court of Appeals raising the same claim and arguing that maximum sentences are aggravated under Arizona law. (Doc. 5 at 14-26.)  The appellate court denied relief and found that the trial court did not abuse its discretion in finding that Petitioner's "guilty plea was knowing, voluntary, and intelligent." (Doc. 11, Ex. Z.)

**C.     Federal Petition for Writ of Habeas Corpus**

On May 27, 2014, Petitioner filed an amended petition for writ of habeas corpus in this Court.  (Doc. 5.)  Petitioner argues that his consecutive sentences violate the Double Jeopardy Clause and that the trial court improperly interpreted the permissible sentencing structure under state law.  (Doc. 5 at 6-9.)

**II.     Petitioner's Claims Based on State Law are not Cognizable**

Petitioner asserts that the trial court misinterpreted the permissible sentencing structure under Arizona law and that the court did not properly calculate Petitioner's time served.  (Doc. 5 at 6-7.)  Petitioner also argues that his guilty plea was coerced by the trial court's statements regarding the sentence it would impose, but does not cite federal law to support that claim.   Respondents argue that these claims are not cognizable because they are matters of state law.[1]  (Doc. 11 at 24-25.)

The United States Supreme Court has held that state-law claims are not cognizable on federal habeas corpus review.  *Estelle v. McQuire*, 502 U.S. 62, 67-68 (1991); *see Cacoperdo v. Demosthenes*, 37 F.3d 504, 507 (9th Cir. 1994) (finding a petitioner's claim that the state court erred in imposing consecutive sentences was not cognizable in federal habeas); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993) (holding that "claim

---

[1]  Petitioner claims that the trial court violated 18 U.S.C. § 1001(a)(2) by making a false statement regarding the sentence it would impose.  This statute provides for criminal prosecution of false statements and does not provide a basis for federal habeas corpus relief.

regarding merger of convictions for sentencing is exclusively concerned with state law and therefore not cognizable in a federal habeas corpus proceeding."); *Gerlaugh v. Lewis*, 898 F. Supp. 1388, 1412-13, n.18 (D. Ariz. 1995) (declining to address a habeas petitioner's claim that his sentence violated an Arizona statute because it was a matter of state law).

Petitioner's challenges to his sentences and the calculation of presentence incarceration credit are based on the application of state law and, therefore, are not cognizable on federal habeas corpus review. *See* U.S.C. § 2254; *Estelle*, 502 U.S. at 67-68; *Jackson v. Ylst*, 921 F.2d 882 (9th Cir. 1990) (federal court has no authority to review state application of state law); *Miller v. Vasquez*, 868 F.2d 1116, 1118–19 (9th Cir. 1989) (refusing to consider alleged errors in violation of state sentencing law). Accordingly, the claims of state-law sentencing error should be dismissed. Additionally, because Petitioner does not cite a federal basis for his challenge to the voluntariness of his guilty plea, he appears to rely on state law. A state law challenge to the voluntariness of his guilty plea is not cognizable on federal habeas corpus review.

## III.   Petitioner's Double Jeopardy and Voluntariness Claims are Procedurally Barred

In addition to challenging his sentence on state law grounds, Petitioner argues that his consecutive sentences violate the Double Jeopardy Clause and, liberally construing the Petition, he argues that his plea was involuntary. (Doc. 5 at 6-8.) As discussed below, these claims are procedurally barred from federal habeas corpus review.

Ordinarily, a state prisoner seeking federal habeas corpus relief must first exhaust available state remedies. 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner.[2] *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

---

[2] In Arizona, unless a prisoner has been sentenced to death, the "highest court" requirement is satisfied if the petitioner has presented his federal claim to the Arizona Court of Appeals either through the direct appeal process or post-conviction proceedings.

1    In his petition for post-conviction review, Petitioner did not allege a double
2  jeopardy violation or argue that his guilty plea was coerced in violation of federal law.
3  (Doc. 11, Ex. S.)  Although Petitioner challenged his plea, he based his claim on Arizona
4  Rule of Criminal Procedure 17, arguing that he entered his guilty plea in reliance on a
5  promise regarding his sentence that was unfulfilled.  (Doc. 11, Ex. S.)  Petitioner
6  specifically stated that he "sought relief because his guilty plea violated Rule 17 . . . ."
7  (*Id*. at 1.)  With the exception of a single citation to a federal case, *Brady v. United States*,
8  397 U.S. 732, 748 (1970), Petitioner based his arguments on state law, and the post-
9  conviction court resolved the issue on the basis of state law.  (Doc. 11, Exs. S, U, V.)
10    Similarly, on appeal of the denial of post-conviction relief, Petitioner argued that
11  the post-conviction court "abuse[d] its discretion when it dismissed [Petitioner's] petition
12  for post-conviction relief based on the court's own violation of Rule 17, Arizona Rules of
13  Criminal Procedure, by accepting his guilty plea, which was based on an unfulfilled
14  promise that the Court made to the Defendant regarding the sentence he would receive."
15  (Doc. 5 at 15.)  Although Petitioner again cited *Brady*, he otherwise relied entirely on
16  state law.  (Doc. 5 at 14-26.)  A single citation to a federal case is not sufficient to present
17  a federal claim when Petitioner specifically stated that he sought relief under Rule 17 and
18  otherwise relied on state law to support his claim.  *See Anderson v. Harless*, 459 U.S. 4,
19  6, (1982) (per curiam) (to fairly present a federal claim, it is not enough that all the facts
20  necessary to support the federal claim were before the state courts or that a "somewhat
21  similar state law claim was made.")  Accordingly, Petitioner did not fairly present a
22  double jeopardy claim or a federal challenge to this guilty plea in his petition for post-
23  conviction review.
24    It would be futile for Petitioner to return to the state courts to try to exhaust these
25  claims because a successive petition for post-conviction relief would be untimely, and
26  because these claims could have been raised in Petitioner's prior post-conviction
27
28  *Crowell v. Knowles* , 483 F. Supp. 2d 925, 931-33 (D. Ariz. 2007) (discussing *Swoopes v. Sublett*, 196 F.3d 1008, 1010 (9th Cir. 1999)).

proceeding and so would be precluded from Rule 32 review.  *See* Ariz. R. Crim. P. 32.2(a)(3) and 32.4(a); *see also State v. Bennett*, 146 P.3d 63, 67 (Ariz. 2006) ("As a general rule, when ineffective assistance of counsel claims are raised, or could have been raised, in a Rule 32 post-conviction proceeding, subsequent claims of ineffective assistance will be deemed waived and precluded.") (internal quotation omitted). Accordingly, these claims are technically exhausted and procedurally barred from habeas corpus review.  *See McKinney v. Ryan*, 730 F.3d 903, 913 n.6 (9th Cir. 2013) (finding claims procedurally defaulted because petitioner was barred from exhausting his claims in the first instance by Rules 32.2(a)(3) and 32.4(a)).

Because Petitioner's double jeopardy claim and his challenge to the voluntariness of his guilty plea are procedurally defaulted, habeas corpus review is not available unless Petitioner establishes a fundamental miscarriage of justice or cause and prejudice.  *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991) (A federal court may review the merits of procedurally defaulted claims if a petitioner establishes "cause for the default and actual prejudice as a result of the allegation violation of federal law, or demonstrate[s] that failure to consider the claims will result in a fundamental miscarriage of justice.").

Petitioner does not allege, and has not established, a "fundamental miscarriage of justice" to overcome the procedural bar to review of his defaulted claims.  (Docs. 5, 12.) Additionally, Petitioner does not assert cause to excuse his procedural default of his challenge to the voluntariness of his guilty plea.  (*Id.*)

However, as cause for his failure to raise a double jeopardy claim to the state courts, Petitioner argues that his counsel "should have known the double jeopardy claim was a federal issue."  (Doc. 12 at 5.)  Liberally construing Petitioner's reply, he alleges that post-conviction counsel was ineffective for failing to assert that Petitioner's consecutive sentences violated the Double Jeopardy Clause.

Ineffective assistance of counsel may constitute cause for failing to properly exhaust claims in state court and excuse procedural default.  *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998).  However, ordinarily, to meet the "cause" requirement, the

1    ineffective assistance of counsel must amount to an independent constitutional violation.

2    *Id.*  Accordingly, when no constitutional right to an attorney exists (such as in a post-

3    conviction proceeding), ineffective assistance will not amount to cause excusing the state

4    procedural default.  *Id.*  The Supreme Court has held that "[t]here is no constitutional

5    right to an attorney in state post-conviction proceedings.  Consequently, a petitioner

6    cannot claim constitutionally ineffective assistance of counsel in such proceedings."

7    *Coleman v. Thompson*, 501 U.S. 722, 752 (1991) (citations omitted).  Thus, in *Coleman,*

8    the Court held that the ineffectiveness of post-conviction counsel also could not establish

9    cause to excuse a failure to properly exhaust state remedies and procedural default on a

10   claim.  *Id.*

11          However, in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012), the

12   Supreme Court established a limited exception to this general rule.  The Court held that

13   the ineffective assistance of post-conviction counsel "at initial-review collateral review

14   proceedings" — while not stating a constitutional claim itself — may establish cause to

15   excuse procedural default of claims of ineffective assistance of trial counsel when a post-

16   conviction proceeding represents the first opportunity under state law for a petitioner to

17   litigate such claims.  *Id.* at 1315.  In *Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir.

18   2013), the Ninth Circuit held that the *Martinez* standard for cause applies to all Sixth

19   Amendment ineffective-assistance claims that have been procedurally defaulted by

20   ineffective counsel in the initial-review state-court collateral proceeding. (*Id.*)

21          Because the *Martinez* cause standard applies only to defaulted ineffective

22   assistance of counsel claims, it does not apply to Petitioner's double jeopardy claim.

23   Accordingly, Petitioner cannot rely on *Martinez* and he has not shown cause for his

24   failure to properly present his double jeopardy claim to the state courts.  Therefore, the

25   Court does not consider whether Petitioner can establish prejudice.  *See Smith v. Murray*,

26   477 U.S. 527, 533 (1986) (stating that the court does not need to consider prejudice when

27   the petitioner does not demonstrate cause).  Thus, Petitioner has not established a basis to

28

1   overcome the procedural bar to federal habeas corpus review of his double jeopardy

2   claim and his claim that his guilty plea was involuntary.

3   **IV.   Merits Review of Challenge to Voluntariness of Guilty Plea**

4        Even if Petitioner's challenge to his guilty plea were properly before this Court, it

5   would fail on the merits.   To be valid, a guilty plea must be knowing, voluntary, and

6   intelligent.  *United States v. Brady*, 397 U.S. 742, 748 (1970).  Liberally construing the

7   Petition, Petitioner contends that his guilty plea was involuntary because the trial court

8   represented that it would not impose aggravated and stacked sentences, but imposed

9   sentences that were inconsistent with that promise.

10       The plea agreement provided that "each Class 4 felony carries a presumptive

11   sentence of **2.5 years**; a minimum sentence of **1.5 years** . . . ; and a maximum sentence of

12   **3 years** (an aggravated sentence of **3.75 years**)." (Doc. 11, Ex. K at 1-2) (emphasis in

13   original).   The plea agreement also provided that "each Class 6 felony carries a

14   presumptive sentence of **1 year**; a minimum sentence of .**5 year** . . . ; and a maximum

15   sentence of **1.5 years** (an aggravated sentence of **2 years**)."  (*Id.*) (emphasis in original).

16       During the change of plea hearing, Petitioner inquired about his possible sentence

17   based on the court's "previous commitment to three years" (before the plea was changed

18   to include a new charge), and asked whether the sentence for the new charge would be

19   stacked.  (Doc. 11, Ex. L at 7.)  The trial court told Petitioner that it did not know "the

20   answer to that [question]."   (Doc. 11, Ex. L at 6.)   The court emphasized that its

21   "sentencing options were completely open . . . ."  (*Id.*)  The court stated that it was

22   concerned about the new charge, because it had "not yet considered the fact that there

23   was another charge out there."  (*Id.*)  The court stated that it did not "think" that the

24   sentences would be "aggravated and stacked," but "beyond that, [the court couldn't]

25   really tell [Petitioner] what it [planned] to do."  (*Id.*)  The court explained that it was a

26   completely different plea agreement than the one that had been offered before, and it

27   wanted to see the presentence report to learn more about the new count and the

28   circumstances surrounding that count.   (*Id.*)  After the trial court's statement, Petitioner

1    said, "all right," and defense counsel told the court they were ready to proceed.  (*Id.* at 8-

2    9.)

3          As discussed in Section I.A, during the plea colloquy, Petitioner indicated that he

4    understood his sentencing exposure, no one had forced or threatened him to enter the plea

5    agreement, and that there were no promises other than those contained in the plea

6    agreement.  (*Id.* at 12.)  Petitioner's "solemn declarations in open court carry a strong

7    presumption of verity."  *United States v. Rubalcaba*, 811 F.2d 491, 494 (9th Cir. 1987)

8    (rejecting claim of involuntariness of guilty plea).

9          At the sentencing hearing, the court sentenced Petitioner to maximum consecutive

10   sentences of three years' imprisonment on Counts One and Three, maximum consecutive

11   terms of one-and-one-half years' imprisonment on Counts Two and Four, with the

12   sentences for Counts One and Three to run consecutive to the sentences for Counts Two

13   and Four, and with 200 days presentence incarceration credit.  (*Id.* at 12-13.)

14         The record reflects that the trial court did not make a specific promise regarding

15   sentencing.  Although the court indicated that it did not "think" it would aggravate and

16   stack the sentences, it clarified that its sentencing options were open, and that it wanted to

17   see the presentence report before determining Petitioner's sentences.  Additionally, the

18   court imposed sentences that were consistent with the plea agreement.  (Doc. 11, Ex. K.)

19   Moreover, the court did not did not impose the aggravated sentences that were available

20   (an aggravated sentence of five years was available for the class four felonies and an

21   aggravated sentence of 3.75 years was available for the class six felonies).[3]  (Doc. 11,

22   Ex. K at 1-2.)  Petitioner did not object to his sentences at the time of sentencing.  *See*

23   *United States v. Mims*, 928 F.2d 310, 312 (9th Cir. 1991) (noting that a lack of objection

24   _____

25        [3]   On post-conviction review, the state court concluded that the court sentenced
     Petitioner to stacked maximum terms, not aggravated stacked terms.  (Doc. 11, Ex. V.)
26   The court explained that if Petitioner had been sentenced to aggravated stacked terms, his
     sentence would have been 11.5 years.  (*Id.*)  The court, however, sentenced Petitioner to
27   maximum stacked sentences, which resulted in a sentence of nine years.  (*Id.*)  On habeas
     corpus review, this Court is bound by the state court's interpretation of state sentencing
28   laws.  *See Mullaney v. Wilbur*, 421 U.S. 684, 691 (1975) (stating that, except in "extreme
     circumstances," a federal court is bound by state court's construction of state law);
     *Gentry v. MacDougall*, 685 F.2d 322, 323 (9th Cir. 1982) (same).

1   at sentencing suggests that a plea was knowing and voluntary) (citing *United States v.*

2   *Lunsford*, 787 F.2d 465, 466 (9th Cir. 1986)).  Therefore, the Court finds that Petitioner's

3   guilty plea was knowing and voluntary and he is not entitled to relief on this claim.

4   **V.      Conclusion**

5           Because Petitioner's challenge to his sentences and his guilty plea based on

6   Arizona law are not cognizable on federal habeas corpus review, and because his double

7   jeopardy claim and his claim that his guilty plea was involuntary claims are procedurally

8   barred from federal habeas corpus review or lack merit, the Court recommends that the

9   Amended Petition for Writ of Habeas Corpus be denied and does not reach Respondents'

10  alternative arguments.

11          Accordingly,

12          **IT IS RECOMMENDED** that the Amended Petition for Writ of Habeas Corpus

13  (Doc. 5) be **DENIED**.

14          **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and

15  leave to proceed in forma pauperis on appeal be **DENIED** because the dismissal of the

16  Petition is justified by a plain procedural bar and reasonable jurists would not find the

17  procedural ruling debatable and because Petitioner has not made a substantial showing of

18  the denial of a constitutional right.

19          This recommendation is not an order that is immediately appealable to the Ninth

20  Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate

21  Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The

22  parties have fourteen days from the date of service of a copy of this recommendation

23  within which to file specific written objections with the Court.  *See* 28 U.S.C.

24  § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within

25  which to file a response to the objections.  Failure to file timely objections to the

26  Magistrate Judge's Report and Recommendation may result in the District Court's

27  acceptance of the Report and Recommendation without further review.  *See United States*

28  *v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to

1   any factual determination of the Magistrate Judge may be considered a waiver of a

2   party's right to appellate review of the findings of fact in an order or judgment entered

3   pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

4        Dated this 6th day of February, 2015.

5

6

7

8                                          Bridget S. Bade
                                   United States Magistrate Judge
9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28